In the Matter of the Application of Theodore Papakonstadinou, Holder of a Majority of All Outstanding Shares Entitled to Vote in an Election of Directors, Petitioner,

against
For the Dissolution of Gozzer Corp., a Domestic Corporation, Respondent.


907137-18

Hinman Straub P.C.
Attorneys for Petitioner
(James T. Potter and Jennie L. Shufelt, of counsel)
121 State Street
Albany, New York 12207
Milber Makris Plousadis & Seiden, LLP
Attorneys for Lizbeth Gozzer and Nikolaos Sparakis
(Joseph J. Cooke, of counsel)
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
Rich Michaelson Magaliff, LLP
Attorneys for Respondent Gozzer Corp.
(Howard P. Magaliff, of counsel)
335 Madison Avenue, 9th Floor
New York, New York 10017


Richard M. Platkin, J.

This is a special proceeding brought pursuant to Business Corporation Law ("BCL") article 11. Petitioner Theodore Papakonstadinou commenced the proceeding by Order to Show Cause ("OTSC") dated November 27, 2018 (Hartman, J.), seeking an order: (1) dissolving respondent Gozzer Corp. pursuant to BCL § 1104 (a) and (c); (2) appointing a temporary receiver for the corporation; (3) authorizing the temporary receiver to sell, or authorize the sale of, real property owned by 1043 Broadway, LLC, of which Gozzer Corp. is the sole member; (4) restraining Lizbeth Gozzer and Nikolaos Sparakis from transacting any business of Gozzer Corp.; and (5) restraining creditors from commencing any action against the corporation.
The OTSC was made returnable on January 4, 2019. One day prior to the return date, interested parties Nikolaos Sparakis and Lizbeth Gozzer moved for the dismissal of the Verified Petition pursuant to CPLR 3211 (a) (4), (5) and (7) in lieu of answering. With the permission of the Court, petitioner served opposition to the motion on January 11, 2019, and Sparakis and Gozzer served a reply on January 21, 2019. This Decision & Order follows.
BACKGROUND
A.General Background [FN1]

Petitioner, who has extensive experience in the construction industry, is a director and owner of 95% of the voting shares of Gozzer Corp. ("Corporation"), a domestic corporation with its principal place of business at 1043 Broadway, Albany, New York ("Premises"). The remaining 5% of the Corporation's shares are owned by Lizbeth Gozzer ("Gozzer").
In or about 2009, Nikolaos Sparakis sought assistance concerning Gozzer Corp. from petitioner, his then-friend. Sparakis had formed the Corporation with the goal of establishing a construction business, but the stock had been put in the name of Gozzer, with whom Sparakis is in a close personal relationship, to avoid creditors. However, Gozzer lacked experience in the construction industry, which left the Corporation unable to obtain the bonding required to bid on public construction projects.
To help his then-friend, petitioner allegedly took out an $800,000 loan on a commercial property that he owned and used the proceeds to capitalize Gozzer Corp. Some of these funds were used to purchase the Premises for the Corporation's use. In addition, petitioner claims to have made nonmonetary contributions to the Corporation, including assisting in the preparation of bids and obtaining bid bonds. In exchange for his contributions, Gozzer transferred 95% of the shares of the Corporation to petitioner.
According to petitioner, the plan was for Sparakis to focus on the administrative functions of the Corporation until Gozzer Corp. gained the ability to obtain its own bonding. At that time, petitioner would turn his shares in the Corporation over to Sparakis and Gozzer on terms to be [*2]negotiated in the future, which would include the repayment of petitioner's investments in the Corporation and compensation for his efforts on behalf of the Corporation.
Petitioner claims that it became clear after a few years that Sparakis was not properly administering the Corporation and, instead, was using the Corporation's assets to fund his personal lifestyle. This caused a falling out between petitioner and Sparakis. 
In or about Fall 2014, the parties decided to part ways and began informally dividing up certain assets of the Corporation. Although some progress initially was made in negotiating an amicable separation, petitioner claims that these efforts fell apart after an accounting disclosed the full extent of Sparakis's wrongdoing.
Since that time, petitioner claims to have been completely excluded from the management of the Corporation and denied access to its books and records. Petitioner and Gozzer, the two shareholders and directors, are said to be hopelessly deadlocked and unable to hold shareholder meetings or meetings of the board of directors ("Board"). Petitioner further alleges that he has been prevented from electing new directors to break the deadlock by reason of Gozzer's refusal to hold annual shareholder meetings or recognize the actions taken at an emergency meeting called by petitioner in late 2016. Petitioner also complains that Sparakis and Gozzer are operating the Corporation without any oversight or authorization from a functional board of directors and are using Gozzer Corp.'s property to operate competing construction businesses.
On the basis of the foregoing allegations, petitioner sues for dissolution under BCL § 1104 (a) and (c) on the grounds that: (1) the two-person Board has not met in years and, in any event, is hopelessly deadlocked; (2) Gozzer has refused to hold annual shareholder meetings or recognize the validity of a special meeting called by petitioner; (3) Gozzer has prevented petitioner from gaining access to the Corporation's books and records; and (4) Sparakis and Gozzer are wasting and diverting the assets of the Corporation. Most recently, the two directors are said to have deadlocked on a decision whether to sell the Premises at a premium price.
B.Governance of the Corporation
1.The Bylaws
Pursuant to the bylaws of the Corporation (see Verified Petition, Ex. C ["Bylaws"]), an annual meeting of shareholders is to be held on or about the 21st day of March each year (see Bylaws, art II, § 2). At each annual meeting, directors are elected "to hold office until the next annual meeting" (id., art III, § 3).
With two shareholders, the Bylaws require a Board consisting of two directors (see id., art III, § 2). The presence of a majority of the entire Board is required for a quorum (see id., art III, § 7). Actions of the Board require a majority vote of the directors present (see id., art III, § 8), and each director casts a single vote, regardless of the number of shares owned (see id.). Thus, both directors must be present for a meeting of the Board, and their unanimous consent is required for Board action.
Special meetings of the shareholders may be called only by: (i) the president; or (ii) the secretary, upon the written request of the Board (see id., art II, § 3). Gozzer is the president of the Corporation, but there has not been a secretary since 2010.
2.Meetings
The proof submitted by petitioner shows that there has not been a shareholders meeting or a meeting of the Board for more than seven years. 
At the first meeting of the two shareholders, held on March 21, 2009, Gozzer was appointed president and secretary of the Corporation, but no directors were elected (see Verified Petition, Ex. D). Instead, Gozzer and petitioner appear to have assumed the role of directors without any formal vote.
A regular meeting of the shareholders was held on March 23, 2010. At this meeting, Gozzer resigned the office of corporate secretary, but no directors were approved (see id., Ex. E).
The most recent regular meeting of the shareholders was held on October 24, 2011, at which Gozzer and petitioner were elected as the Corporation's chief executive and chief operating officer, respectively (see id., Ex. F). Again, no directors were elected.
In November 2016, petitioner served notice of an emergency shareholders meeting for the election of directors pursuant to BCL § 603 (a). While the meeting was held on January 7, 2017, the validity of that meeting and the actions purportedly taken therein have been contested by Gozzer and Sparakis in a lawsuit pending in Supreme Court, Queens County (see infra).
Petitioner alleges that he cannot convene a special meeting of the Board because the deadlocked directors cannot reach agreement, the Corporation's president (Gozzer) is unwilling to call the meeting, and there is no secretary (see Bylaws, art II, § 3).
C.The Premises
The Corporation owns a 100% membership interest in 1043 Broadway, LLC ("the LLC"). The principal asset of the LLC is the Premises, which were acquired to serve as a headquarters for the Corporation. The Premises are directly adjacent to Druthers Brewing Company ("Druthers").
Petitioner contends that there is no benefit to Gozzer Corp. from continued ownership of the Premises because the parties' disagreements have left the Corporation's business essentially dormant. According to petitioner, Gozzer currently is permitting the Premises to be used without the payment of rent by the Alvion Group, Inc. ("Alvion"), a corporation owned by Sparakis's brother, and Gozer Corporation ("Gozer"), a corporation owned solely by Gozzer,[FN2]
for the operation of construction businesses that compete with Gozzer Corp.
The Corporation has been approached on a number of occasions by Chris Martell, the president of Druthers, about purchasing the Premises for purposes of expansion. According to petitioner, Martell repeatedly has offered to purchase the Premises for well above its fair market value. In his most recent offer, Martell offered $850,000 (plus full environmental indemnity) for the Premises, so long as a closing is held by January 31, 2019.[FN3]
Petitioner alleges that Gozzer and Sparakis refused essentially the same offer based on their desire to continue using the Premises rent-free to operate competing construction businesses.
[*3]D.The Queens County Action
Following the parties' falling out and unsuccessful settlement efforts, Sparakis and Gozzer commenced an action in Supreme Court, Queens County against petitioner, Gozzer Corp. and Aktor Corporation ("Aktor"), a construction company wholly owned by petitioner (see Sparakis v Gozzer Corp., Queens County Index No. 712508-15 ["Queens County Action"]). 
In the Queens County Action, Sparakis and Gozzer ("Queens Plaintiffs") allege, among other things: (i) the failure to repay Sparakis for loans made to the Corporation; (ii) the failure to pay Sparakis an annual salary of $200,000; (iii) the defendants' breach of the duty to properly operate and manage Gozzer Corp.; (iv) a claim of fraud predicated on allegations that petitioner misrepresented that "the assets of Gozzer [Corp.] would be split and . . . the shares of Gozzer [Corp.] would be transferred to Sparakis and/or Lizbeth Gozzer" (Verified Petition, Ex. L ["Amended Complaint"], ¶ 40); (v) breaches of fiduciary duties owed to the Corporation, including the diversion of corporate funds and assets; and (vi) imposition of a constructive trust upon the business interests of petitioner and any monies derived therefrom (see generally id.). In an answer with counterclaims, petitioner and Gozzer Corp. ("Queens Defendants") allege similar wrongdoing on the part of Sparakis and Gozzer (see Verified Petition, Ex. M).
Petitioner asserts that the Queens County Action is expected to resolve the parties' competing allegations of past wrongdoing and generate an accounting that can guide the judicial dissolution of Gozzer Corp. in this proceeding. A trial of the Queens County Action is scheduled for April 1, 2019, but the Queens Defendants have filed a motion seeking an extension of the discovery schedule and an adjournment of the trial date.
There were two motions made in the Queens County Action that bear on petitioner's pending application here. First, the Queens Defendants moved in September 2016 for injunctive relief similar to that sought by petitioner in the fourth prong of the OTSC in this proceeding. The Court (Grays, J.) denied the preliminary injunction in a Decision & Order dated March 9, 2017, finding that the divergent fact affidavits submitted by the parties and petitioner's failure to submit corroborating documentation deprived the Queens Defendants of the clear likelihood of success needed for the requested preliminary injunctive relief (see NYSCEF Doc No. 94, in Queens County Action).[FN4]

On January 5, 2017, Sparakis and Gozzer moved for summary judgment in the Queens County Action to enforce a purported settlement agreement that, among other things, allegedly called for petitioner to transfer his shares in the Corporation to them. According to the motion papers submitted by the Queens Plaintiffs, petitioner orally agreed to transfer his shares in July 2015, "[a]n oral agreement respecting ownership of Gozzer [Corp.] and distribution of its [*4]assets/profits was reached on February 10, 2016," and a written settlement agreement was executed on February 25, 2016 (Potter Opp. Aff., Ex. C, ¶ 4).
In a Decision & Order dated September 18, 2017 (Grays, J.), the Court denied the Queens Plaintiffs' motion and ruled as a matter of law that the purported settlement agreements of February 10, 2016 and February 25, 2016 were not enforceable against Gozzer Corp. or petitioner (see Potter Opp. Aff., Ex. D ["Queens SJ Decision"]). In addition to determining that the agreements did not comply with CPLR 2104,[FN5]
the Court ruled that the alleged written agreement "was not a definite settlement agreement but merely . . . an agreement to agree sometime in the future" (id., p. 2). In this regard, the Court found that the parties' "settlement negotiations continued not only after the original [oral] agreement allegedly was reached but subsequent to [Queens P]laintiffs' presentation of the second agreement as well" (id.). 
E.Sparakis and Gozzer's Opposition/Motion to Dismiss
In opposing the interim relief sought in the OTSC and in moving for the dismissal of this proceeding under CPLR 3211, Sparakis and Gozzer rely principally on a fact affidavit submitted by Sparakis and filings from the Queens County Action. Despite Gozzer's status as the Corporation's other shareholder and director, she did not submit an affidavit. 
According to Sparakis, petitioner is using this proceeding "to damage the competing construction business operated by [Sparakis and Gozzer] by working in concert with Druthers . . . to sell the property from which [they] currently operate [their] business" (Sparakis Aff., ¶ 3). Sparakis explains that, after the parties' falling out, petitioner began transferring Gozzer Corp.'s contracts to Aktor (see id., ¶ 8). Sparakis also claims that petitioner diverted funds from Gozzer Corp. to fund purchases of real estate, including the premises from which Aktor operates (see id., ¶¶ 9-11). In light of these transfers and diversions, petitioner allegedly agreed that Sparakis and Gozzer could continue to use the Premises as the Corporation's headquarters and take title to it (see id., ¶ 12). Since petitioner no longer wished to be involved in the Corporation, he also allegedly agreed to transfer his shares to Sparakis and/or Gozzer (see id.).
Based upon these alleged agreements and understandings, Sparakis and Gozzer have used the Premises in recent years to operate two other construction firms: Alvion and Gozer (see id., ¶ 19). According to Sparakis, it would be unfair to order the sale of Premises of which he and Gozzer are the rightful owners, particularly since Aktor is using premises allegedly purchased using capital diverted from the Corporation (see id., ¶¶ 31, 35).
With respect to the Druthers offer, Sparakis submits a comparative market analysis showing that the Premises has a current value of between $650,000 and $700,000 (see id., ¶ 29 & Ex. I). Sparakis also claims to have expended about $200,000 on the Premises in recent years, including the payment of taxes, capital improvements, repairs and utilities (see id., ¶¶ 22, 35).
MOTION TO DISMISS
[*5]A.CPLR 3211 (a) (4)
Gozzer and Sparakis first argue that this dissolution proceeding should be dismissed due to the pendency of the Queens County Action. Under CPLR 3211 (a) (4), a court has the discretion to dismiss an action or proceeding where "there is another action pending between the same parties for the same cause of action in a court of any state or the United States." Dismissal of a case due to the pendency of a prior action is warranted "where there is a substantial identity of the parties and causes of action" (Cherico, Cherico & Assoc. v Midollo, 67 AD3d 622, 622 [2d Dept 2009]; see Matter of Schaller v Vacco, 241 AD2d 663, 663 [3d Dept 1997]).
1.Substantial Identity
Although there is a substantial identity of parties between this proceeding and the Queens County Action, the causes of action alleged and the issues to be decided differ significantly. The focus of the Queens County Action is determination of the parties' dueling allegations of past wrongdoing in relation to the Corporation, including competing claims for breach of contract and the conversion/diversion of corporate assets. Here, in contrast, petitioner's claims for judicial dissolution look to the capacity of the Corporation to govern itself through a functional board of directors (see BCL § 1104 [a] [1]) and shareholders who are capable of working together to ensure the "continued functioning and prosperity" of the Corporation despite any dissension, disagreement or division that may exist (Matter of Dream Weaver Realty, Inc. [Poritzky—DeName],70 AD3d 941, 942 [2d Dept 2010] [internal quotation marks and citation omitted]; see BCL § 1104 [a] [3]). 
There also are significant differences in the relief sought in the two cases. The principal relief sought here is a judgment dissolving Gozzer Corp., whereas the claims and counterclaims in the Queens County Action are directed principally at monetary relief (see Amended Complaint, Wherefore Clause). While Sparakis and Gozzer maintain that this characterization of the Queens County Action "as one primarily for money damages . . . conveniently ignores the equitable count for a constructive trust" (Reply Mem., p. 3), it is apparent that the equitable claim is being employed as a remedy for petitioner's alleged "illegal, fraudulent [and] oppressive actions" in diverting the Corporation's assets to other companies in which he has a financial interest, including Aktor, a construction business, and 44 Tivoli Street Assoc., LLC, the owner of the premises from which Aktor operates (see Amended Complaint, ¶¶ 74, 76). Thus, the equitable claim merely is another vehicle by which the Queens Plaintiffs seek recovery of the Corporation's assets that allegedly were misappropriated or diverted by petitioner.
To be sure, the Court recognizes that there is some degree of overlap between the two cases, particularly with regard to the parties' competing allegations of misconduct, which are said to have engendered the deadlock, dissension and disagreement complained of by petitioner. But in this proceeding for judicial dissolution, the underlying reasons for the parties' falling out or their inability to work cooperatively together are "of no moment, nor is it at all relevant to ascribe fault to [any] party. Rather, the critical consideration [in determining dissolution] is [whether] dissension exists and has resulted in a deadlock precluding the successful and profitable conduct of the corporation's affairs" (Matter of Goodman v Lovett, 200 AD2d 670, 670-671 [2d Dept 1994], lv dismissed 84 NY2d 850 [1994]; see Matter of ANO, Inc. v Goldberg, 167 AD3d 731, 732 [2d Dept 2018]).
2.Alleged Agreement to Transfer Shares
Sparakis and Gozzer further argue that dismissal is warranted under CPLR 3211 (a) (4) because petitioner agreed in July 2015 to transfer his shares to Gozzer, and a judgment in the Queens County Action enforcing that agreement would obviate the need for dissolution of the Corporation or the sale of the Premises. For the reasons that follow, the Court finds this argument unconvincing.
The Court in the Queens County Action already has ruled that neither petitioner nor Gozzer Corp. are bound by the purported oral settlement agreement of February 10, 2016 or the purported written settlement agreement of February 25, 2016. Notably, both of these failed "agreements to agree" called for petitioner to transfer his shares of Corporation stock to Gozzer as part of an arrangement by which petitioner would separate himself from the Corporation (see NYSCEF Doc No. 80, ¶ 7, in Queens County Action [affidavit of Sparakis in support of motion for partial summary judgment]).
In light of this ruling, Sparakis and Gozzer have failed to demonstrate any plausible basis by which they can obtain enforcement of the alleged July 2015 oral agreement in the Queens County Action. The papers submitted to Queens Supreme Court in support of plaintiffs' motion to enforce the alleged settlement agreements clearly referenced the predecessor oral agreement of July 2015 (see Potter Opp. Aff., Ex. C, ¶ 4), but there is nothing in the Queens SJ Decision suggesting that the enforceability of this alleged agreement remains an open issue following the Court's determination that the parties' subsequent oral and written agreements concerning the same subject matter were unenforceable as a matter of law.
Moreover, even if the enforceability of the alleged July 2015 oral argument remains open and the Queens Plaintiffs are permitted to litigate this unpleaded claim in a case that is said to be on the "eve of trial,"[FN6]
Sparakis and Gozzer have not shown any appreciable likelihood of success. It seems clear that the July 2015 oral agreement by which petitioner allegedly agreed "to transfer his shares to Ms. Gozzer" (Verified Petition, Ex. S, ¶ 12) was part and parcel of the same course of "separation" negotiations as the failed oral agreement of February 10, 2016 and failed written agreement of February 25, 2016. Since neither the February 10, 2016 oral agreement nor the February 25, 2016 "agreement" constituted "a definite settlement agreement" and, instead, "merely represented an agreement to agree sometime in the future" (Queens SJ Decision, p. 2), the same holds true of the earlier oral agreement, the terms of which were far murkier than the [*6]failed 2016 agreements.[FN7]

3.Other Discretionary Considerations
In addition to the significant differences in the causes of action alleged, the issues to be adjudicated and the judicial relief requested, the Court also is mindful that Queens County is not a proper venue for a proceeding to dissolve Gozzer Corp. Under BCL § 1112, a "special proceeding [for judicial dissolution] shall be brought . . . in the judicial district in which the office of the corporation is located at the time of . . . the presentation to the court of the petition in such special proceeding." Sparakis and Gozzer concede that the Corporation is "currently located" in Albany County and, therefore, venue in Queens County would be improper (Opp Mem, p. 7), and there is no merit to their contention that petitioner should have counterclaimed for dissolution in a venue they concede to be improper.
Finally, for the reasons discussed below in the context of petitioner's request for temporary relief, the Court is satisfied that this proceeding for judicial dissolution can be managed in a reasonably coordinated fashion with the Queens County Action, which further counsels against dismissal under CPLR 3211 (a) (4).
4.Conclusion
In the exercise of discretion, the branch of the motion seeking dismissal under CPLR 3211 (a) (4) is denied.
B.CPLR 3211 (a) (5) (Res Judicata)
Gozzer and Sparakis next contend that this action is barred by principles of res judicata. Under New York's transactional approach to res judicata, or claim preclusion, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (O'Brien v City of Syracuse, 54 NY2d 353, 357 [1981]; see Smith v Russell Sage Coll., 54 NY2d 185, 192 [1981]). Thus, "[a] judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first" (Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 306-307 [1929, Cardozo, Ch. J.]; see Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999]).
Inasmuch as the Queens County Action has not gone to final judgment on the merits, principles of claim preclusion do not bar the instant proceeding (see Landau, P.C. v LaRossa, Mitchell & Ross, 11 NY3d 8, 13 [2008]). 
Moreover, even if the Queens County Action had gone to final judgment, petitioner's failure to pursue dissolution therein would not bar this proceeding. Unlike federal practice, New York has not adopted a compulsory counterclaim rule (see CPLR 3019 [a]; Batavia Kill Watershed Dist. in County of Greene v Charles O. Desch, Inc., 83 AD2d 97, 100 [3d Dept 1981], affd 57 NY2d 796 [1982]), and petitioner's application for judicial dissolution is not the type of [*7]"pre-existing claim for relief that would impair the rights or interests [to be] established in the [Queens County Action]" (Classic Autos. v Oxford Resources Corp., 204 AD2d 209, 209 [1st Dept 1994]; accord Henry Modell & Co. v Minister, Elders & Deacons of the Reformed Protestant Dutch Church of City of NY, 68 NY2d 456, 462 n 2 [1986]).
Finally, the fact that certain of the temporary relief sought herein may be the same as temporary relief that was denied in the Queens County Action does not implicate principles of claim preclusion (see Matter of Sheridan Constr. Corp., 22 AD2d 390, 393 [4th Dept 1965], affd 16 NY2d 680 [1965]). "[T]he grant or denial of a request for a preliminary injunction . . . is not an adjudication on the merits and will not be given res judicata effect" (Coinmach Corp. v Fordham Hill Owners Corp., 3 AD3d 312, 314 [1st Dept 2004]).[FN8]

Based on the foregoing, the branch of the motion seeking dismissal of this proceeding under CPLR 3211 (a) (5) is denied.
C.CPLR 3211 (a) (7) (Failure to State a Cause of Action)
Sparakis and Gozzer further contend that petitioner has failed to establish a prima facie case of deadlock or dissension under BCL § 1104. 
Judicial dissolution of a business corporation is authorized where "the directors are so divided respecting the management of the corporation's affairs that the votes required for action by the board cannot be obtained" (BCL § 1104 [a] [1]). Dissolution also is available where "there is internal dissension and two or more factions of shareholders are so divided that dissolution would be beneficial to the shareholders" (id. [a] [3]). In determining whether to grant dissolution, "the benefit to the shareholders of a dissolution is of paramount importance" (id., § 1111 [b] [2]).
Liberally construing the Verified Petition, as amplified by petitioner's moving affidavit, and giving petitioner the benefit of all favorable inferences (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002]), the Court is satisfied that the Verified Petition sufficiently alleges shareholder dissension under BCL § 1104 (a) (3) and director deadlock under BCL § 1104 (a) (1). In particular, the Verified Petition alleges, among other things, that: the two shareholders and directors of the Corporation have been engaged in acrimonious litigation for over three years; there have not been meetings of the Corporation's shareholders or directors for more than seven years; the shareholders/directors are unable to work together to carry forward the Corporation's mission of serving as a commercial construction contractor, which has left the Corporation effectively dormant; each of the shareholders/directors are operating competing [*8]construction companies; the Corporation's 95% shareholder has been completely frozen out of the Corporation's business; the remaining assets of the Corporation are being used for noncorporate purposes; and there is no oversight or direction over the Corporation from a functional board of directors.
Sparakis and Gozzer further challenge petitioner's reliance on BCL § 1104 (c) as a basis for dissolution. BCL § 1104 (c) provides:

 Notwithstanding any provision in the certification of incorporation, any holder of shares entitled to vote at an election of directors of a corporation, may present a petition for its dissolution on the ground that the shareholders are so divided that they have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election and qualification of their successors.
According to Gozzer and Sparakis, there is no proof that Gozzer's term as a director ever expired. However, as petitioner observes, the plain language of the Bylaws states that directors hold office for a one-year term, "until the next annual meeting" of the Corporation's shareholders (Bylaws, art III, § 3). To be sure, the Bylaws also include a holdover provision that allows a director to continue serving until his or her successor is elected and qualified (see id.), but this language cannot be read as granting Gozzer a perpetual term of office or a permanent veto power over the election of new directors (see generally BCL §§ 602 [b]; 703).
For all of the foregoing reasons, the branch of the motion seeking dismissal under CPLR 3211 (a) (7) is denied.
TEMPORARY RELIEF
A.Legal Standard
"At any stage of an action or special proceeding under [BCL article 11], the court may, in its discretion, make all such orders as it may deem proper in connection with preserving the property and carrying on the business of the corporation, including the appointment and removal of a receiver under [BCL] article 12" (BCL § 1113). 
Under BCL article 12, a court may appoint a receiver in a proceeding for dissolution (see id., § 1202 [a] [1]), including a temporary receiver (see id., § 1203 [a]). A temporary receiver may be granted all of the powers and duties of a permanent receiver, or so much of them as the Court deems proper (see id. [b]; see also id., § 1206 [powers of permanent receiver]).
The Court may also, "in its discretion, grant an injunction, effective during the pendency of the . . . special proceeding" for the specified purposes, which include "[r]estraining the corporation and its directors and officers from transacting any unauthorized business and from exercising any corporate powers, except by permission of the court" (id., § 1115 [a] [1]).
B.Analysis
The Court finds that petitioner has demonstrated that the appointment of a temporary receiver is warranted to protect and preserve the assets of Gozzer Corp. The record convincingly demonstrates that there is no oversight or supervision of the Corporation's affairs by the shareholders or a functional board of directors.[FN9]
Indeed, the 95% shareholder/co-director has [*9]been frozen out of the Corporation for years, and Sparakis concedes that the most substantial remaining asset of the Corporation — the Premises — is being used to operate competing construction businesses (see Sparakis Aff., ¶ 19). 
The Court further finds that it would be appropriate for the temporary receiver to examine the sale of the Premises and the Druthers offer, to the extent it still remains open, and to report back to the Court and the parties with suitable recommendations. Gozzer Corp., which has been effectively inactive since November 2015, has no present use for the Premises, and the Court does not believe that the alleged disruption, inconvenience and expense to Gozzer Corp.'s competitors is entitled to any significant weight in the absence of persuasive evidence to substantiate Sparakis and Gozzer's claim of "rightful owners[hip]" of the Corporation or the Premises, which they have failed to adduce (see supra). Moreover, Sparakis concedes that the Druthers offer is well in excess of the property's current market value (see Sparakis Aff., ¶ 29).
The appointment of the temporary receiver and the receiver's due diligence regarding a sale of the Premises can be conducted in parallel with other significant events in this litigation and in the Queens County Action. Specifically, apart from issues of temporary relief, the next step in this proceeding is joinder of issue and prompt determination of petitioner's dissolution claims. Meanwhile, as Sparakis and Gozzer emphasize, "the reality is that the [Queens County] case is still currently scheduled for trial on April 1, 2019" (Reply Mem, p. 8). 
Thus, by the time a receiver is appointed and qualified and has had the opportunity to examine the advisability of a sale of the Premises, it may be possible to have a ruling on dissolution in this proceeding, together with a verdict and accounting in the Queens County Action that can guide the work of the receiver should the application for dissolution be granted. And even if some or all of these issues are not decided by the time of the receiver's report, the Court's decision on a favorable sale recommendation from the receiver (if one is received) can be informed by, among other things, the present status of the cases and the potential prejudice to Sparakis and Gozzer that may result from allowing a sale of the Premises pendente lite.
Finally, given the appointment of a temporary receiver, an injunction pursuant to BCL § 1115 (a) (1), restraining the Corporation and its directors and officers from transacting any business and from exercising any corporate powers, is warranted.[FN10]

CONCLUSION
Accordingly, it is
ORDERED that Sparakis and Gozzer's motion to dismiss the Verified Petition is denied; and it is further
ORDERED that Sparakis and Gozzer shall answer the Verified Petition within twenty (20) days of service of this Decision & Order with notice of entry upon their counsel, and the matter shall be re-noticed for hearing in accordance with CPLR 404 (a); and it is further
ORDERED that during the pendency of this proceeding, the Corporation and its directors and officers are enjoined from transacting any business of the Corporation or exercising any corporate powers, except by the prior permission of the Court; and finally it is
ORDERED that the parties shall confer and attempt to reach agreement on the form of proposed order for the appointment of a temporary receiver, and if the parties cannot reach agreement within a reasonable time, petitioner shall settle an appropriate order at a date and time at which the personal appearances of all counsel shall be required.[FN11]

This constitutes the Decision & Order of the Court, the original of which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, counsel for petitioner shall promptly serve notice of entry on all parties entitled to such notice, including the Office of the Attorney General (see Uniform Rules for Trial Cts [22 NYCRR] § 202.5-b [h] [1], [2]). All papers submitted prior to the conversion of this proceeding to electronic filing are being retained in Chambers, pending determination of the Verified Petition.
Dated: Albany, New York
January 31, 2019
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
1.Order to Show Cause (Hartman, J.), dated November 27, 2018; Verified Petition, sworn to November 26, 2018, with annexed exhibits; Affidavit of Jennie J. Shufelt, Esq. in Support of Order to Show Cause and Temporary Restraining Order, sworn to November 27, 2018, with annexed exhibits; Affidavit of Christopher Martell, sworn to November 20, 2018, with annexed exhibits; Petitioner's Memorandum of Law in Support of Petition and Application for a Temporary Restraining Order and Preliminary Injunction, dated November 26, 2018;
2.Notice of Cross-Motion to Dismiss, dated January 3, 2019; Affirmation of Joseph J. Cooke, Esq. in Opposition to Order to Show Cause and in Support of Cross-Motion, dated January 3, 2019, with annexed exhibits; Affidavit of Nikolaos Sparakis in Opposition to Order to Show Cause and in Support of Cross-Motion, sworn to January 3, 2019, with annexed exhibits; Memorandum of Law in Opposition to Order to Show Cause and in Support of Cross-Motion, dated January 4, 2019;
3.Affidavit of James T. Potter, Esq. in Opposition to Motion to Dismiss and in Further Support of Petition, sworn to January 11, 2019, with annexed exhibits; Petitioner's Memorandum of Law in Opposition to Motion to Dismiss and in Further Support of Petition and Order to Show Cause, dated January 11, 2019; and
4.Reply Memorandum of Law in Opposition to Order to Show Cause and in Support of Cross-Motion, dated January 21, 2019.



Footnotes

Footnote 1:The following facts are drawn from the Verified Petition.

Footnote 2:Petitioner alleges that Gozer was deliberately named as such so as to be easily confused with Gozzer Corp.

Footnote 3:Martell avers that "Druthers is at a point where if it is unable to expand its operations at the present location by purchasing [the Premises] by the end of January 2019, it will need to entirely relocate its operations" (Martell Aff., ¶ 6).

Footnote 4:As stated by Justice Grays: "The affidavits of the parties demonstrate substantial factual issues exist between the parties, including whether either or both parties were using Gozzer Corporation's (Gozzer) funds and assets for non-corporate purposes, whether Nikolaos Sparakis (Sparakis) 'kicked Gozzer out' of the corporation's office located at 1043 Broadway, Albany, New York, whether plaintiffs have blocked defendant's access to the corporate books and records of Gozzer, whether Theodore Papakonstadinou's (defendant) liability as indemnitor for Gozzer's surety bond has been completely terminated, and whether Gozzer is presently inactive or plaintiffs have continued to enter into new contracts under the company's name" (id., p. 2).

Footnote 5:Specifically, the final version of the written settlement agreement was not signed by Gozzer Corp., and the agreement could not be enforced against the other parties because the Corporation's "rights and obligations under the purported agreement are inextricably intertwined with those of the other parties" (id., pp. 1-2).

Footnote 6:All of plaintiffs' remaining causes of action in the Queens County Action seek the recovery of money damages, except for the cause of action seeking to impress a constructive trust on certain of petitioner's business assets. For the reasons previously articulated, however, the clear import of the cause of action for constructive trust is the recoupment of assets allegedly diverted from the Corporation, and there has been no basis presented by which Sparakis and Gozzer could obtain title to petitioner's shares in the Corporation or ownership of the Premises pursuant to this claim. In fact, the Queens County Plaintiffs also seek to recover damages for petitioner's allegedly fraudulent misrepresentation that "the assets of Gozzer [Corp.] would be split to account for the sums due each party pursuant to the above referenced agreements and that upon completion of the split, the shares of Gozzer [Corp.] would be transferred to Sparakis and or Lizbeth Gozzer" (Amended Complaint, ¶ 40).

Footnote 7:Indeed, it is unclear from Sparakis's affidavits exactly what consideration petitioner was to receive for his monetary and nonmonetary contributions to the Corporation and his alleged promise to reconvey his shares of the Corporation.

Footnote 8:In reply, Sparakis and Gozzer take a different tack and belatedly seek to invoke principles of issue preclusion, or collateral estoppel. However, the rulings of Queens Supreme Court in relation to the prior application for preliminary injunctive relief were based on the facts and law presented by the parties in that procedural posture, and no more. Thus, the motion practice in the Queens County Action merely establishes that the record before the Court fell short of demonstrating the prerequisites for a preliminary injunction under CPLR article 63 — an issue that is separate and distinct from the propriety of a temporary receivership under BCL article 11. Thus, there is not the requisite identity of issues needed to invoke collateral estoppel (see Matter of Dunn, 24 NY3d 699, 704 [2015]).

Footnote 9:Given Sparakis and Gozzer's filing of a pre-answer motion to dismiss, the dissolution claims are not presently before the Court for disposition on the merits. Nonetheless, petitioner has demonstrated a significant likelihood of success on the merits.

Footnote 10:Such relief is granted pursuant to BCL § 1115 (a) (1), unlike the prior application for similar relief in the Queens County Action, which was made pursuant to the general provisions of CPLR article 63 (see generally Rust v Turgeon, 295 AD2d 962, 963 [4th Dept 2002]).

Footnote 11:Counsel shall contact Chambers to request a return date for the notice of settlement.